NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 16a0508n.06

Case No. 15-2552

| | | |
|---|---|---|
| UNITED STATES COURT OF APPEALS<br>FOR THE SIXTH CIRCUIT | | **FILED**<br>Aug 26, 2016<br>DEBORAH S. HUNT, Clerk |

| | | |
|---|---|---|
| S. BERTRAM, INC. | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| CITIZENS INSURANCE COMPANY OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendant-Appellee. | ) | O P I N I O N |

BEFORE: MOORE, McKEAGUE and DONALD, Circuit Judges.

**McKEAGUE, Circuit Judge.** "There is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck." *In re Sorah*, 163 F.3d 397, 401 (6th Cir. 1998). Non-party Eden Foods, Inc. (Eden Foods) sued plaintiff-appellant S. Bertram, Inc. (Bertram) for trademark infringement, and Bertram asked defendant-appellee Citizens Insurance Company of America (Citizens) to defend the lawsuit under an insurance policy Citizens issued to Bertram. Unfortunately for Bertram, the insurance policy it agreed to excludes coverage for trademark infringement, and Citizens unsurprisingly refused to defend the lawsuit. Not to be deterred by the lack of coverage, Bertram seeks to circumvent the policy's terms and hold Citizens liable for refusing to defend it by arguing that Eden Foods' lawsuit also included claims for disparagement and trade dress infringement, which would be covered by the

policy. However, the record shows that Eden Foods' claims looked, walked, and quacked only like typical trademark infringement claims—not unpled disparagement or trade dress claims—and Citizens had no duty to defend against those claims. Accordingly, we AFFIRM summary judgment to Citizens.

## I

This case stems from an underlying trademark dispute between Bertram and Eden Foods. Bertram formerly sold food products labeled "Eden Quality Products." In August 2012, the Food and Drug Administration (FDA) recalled some of Bertram's "Eden Quality Products" labeled apple juice due to high arsenic content. Eden Foods, which had registered "Eden" as a trademark for its own food products, sued Bertram in September 2012, alleging claims for trademark infringement, unfair competition, trade name infringement, and trademark dilution by tarnishment. Eden Foods alleged that Bertram's use of the "Eden Quality Products" label caused consumers to confuse Bertram's products with Eden Foods' products and harmed Eden Foods' reputation because consumers mistakenly attributed Bertram's recalled apple juice to Eden Foods.

Bertram asked Citizens to defend and indemnify it against Eden Foods' lawsuit under the commercial general liability insurance policy (the Policy) Citizens issued to Bertram. The Policy provides coverage for "personal and advertising injury," which includes:

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

****

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

R. 17-3, Policy at 17, Definitions 14.d, 14.g, Page ID 426. However, the Policy contains an "IP Exclusion" which clearly states that the policy does not cover claims arising out of trademark and intellectual property infringement:

> This insurance does not apply to:
> \*\*\*\*
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
>
> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

*Id.* at 9, Exclusion 2.i, Page ID 418. Citing this exclusion, Citizens refused to defend Bertram because all of Eden Foods' claims were based on trademark infringement. Bertram ultimately settled with Eden Foods and, pursuant to that settlement, stopped using the "Eden Quality Products" label.

Bertram then sued Citizens, claiming Citizens breached its duty to defend under the Policy. The parties filed cross-motions for summary judgment, with Bertram arguing that Citizens had a duty to defend because Eden Foods' lawsuit *may* have included disparagement and trade dress claims that are covered by the Policy. In a brief opinion, the district court disagreed and granted summary judgment in Citizens' favor. *S. Bertram, Inc. v. Citizens Ins. Co. of Am.*, No. 14-14241, 2015 WL 7351783 (E.D. Mich. Nov. 20, 2015). Bertram timely appealed.

**II**

We review a grant of summary judgment *de novo*. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must view the evidence and draw all reasonable

inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The inquiry is whether a reasonable jury could return a verdict for the nonmoving party or "whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Bertram asks us to hold that Citizens had a duty to defend Bertram against Eden Foods' lawsuit.[1] The duty to defend is broader than the duty to indemnify. *Mem'l Props., LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 529 (N.J. 2012); *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996). It is not limited by the specific language of the pleadings, as the insurer has a duty to look behind the third-party's allegations to analyze whether coverage is possible. *Abouzaid v. Mansard Gardens Assocs., LLC*, 23 A.3d 338, 347 (N.J. 2011); *Am. Bumper & Mfg. Co.*, 550 N.W.2d at 481. The duty to defend applies, even if the complaint asserts theories of liability that are not covered under the policy, if there are any theories of recovery supported by the allegations that fall within the policy. *Abouzaid*, 23 A.3d at 346; *Am. Bumper & Mfg. Co.*, 550 N.W.2d at 484. "In other words, 'potentially coverable' claims require a defense," and "the potential merit of the claim is immaterial: the duty to defend is not abrogated . . . because the cause is groundless, false or fraudulent." *Abouzaid*, 23 A.3d at 346–47 (citation and internal quotation marks omitted); *see Am. Bumper & Mfg. Co.*, 550 N.W.2d at 484. We must resolve doubt regarding whether the underlying lawsuit—here, between Eden Foods and Bertram—alleges potential grounds for liability in favor of the insured (Bertram). *Abouzaid*, 23 A.3d at 347; *Am. Bumper & Mfg. Co.*, 550 N.W.2d at 481.

However, insurers have no duty to defend against actions not covered by the policy. *See Abouzaid*, 23 A.3d at 350; *Zurich Ins. Co. v. Rombough*, 180 N.W.2d 775, 778 (Mich. 1970).

---

[1] While the parties dispute whether Michigan or New Jersey law governs interpretation of the Policy, they agree that the choice of law is relevant only for remedies. Because we affirm summary judgment to Citizens, we need not address remedies or resolve the choice of law question.

The question before us, then, is whether Eden Foods' lawsuit included any potential grounds for liability that would be covered by the Policy. The district court held that the underlying lawsuit included only trademark infringement claims, and therefore Citizens had no duty to defend because of the Policy's IP Exclusion. *S. Bertram, Inc.*, 2015 WL 7351783, at *2–3. Bertram disagrees, arguing on appeal that the Policy covered two potential claims that fall outside the IP Exclusion and triggered Citizens' duty to defend: (1) disparagement and (2) trade dress infringement. We address each in turn.

## A.      Disparagement

Bertram first argues that Eden Foods' lawsuit included a potential claim for disparagement because Eden Foods alleged that Bertram harmed the reputation of its "Eden" trademark when consumers mistakenly attributed Bertram's recalled apple juice to Eden Foods. The Policy provides coverage for damages for an injury arising out of the publication of "material that slanders or libels a[n] . . . organization or *disparages* a[n] . . . organization's goods, products, or services." R. 17-3, Policy at 17, Definition 14.d, Page ID 426 (emphasis added). Thus, if Eden Foods' lawsuit included a potential claim for disparagement, it would be covered under the Policy, triggering Citizens' duty to defend.

As an initial matter, Eden Foods did not bring a disparagement claim against Bertram. The word "disparagement" (or "disparage") does not even appear in Eden Foods' complaint. Still, Bertram correctly notes that we must focus on whether Eden Foods' complaint or discovery responses could *potentially* support a disparagement claim. *See Abouzaid*, 23 A.3d at 347; *Am. Bumper & Mfg. Co.*, 550 N.W.2d at 481.

Even then, Bertram's argument fails because a disparagement claim requires a company to make false, derogatory, or disparaging communications *about a competitor's product*.

*Neshewat v. Salem*, 173 F.3d 357, 362 (6th Cir. 1999) (applying Michigan law); *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 516 A.2d 220, 238 (N.J. 1986) (listing the elements of product disparagement in New Jersey as "(1) publication (2) with malice (3) of false allegations *about the plaintiff's product* or property (4) that causes special damages" (emphasis added)). Eden Foods did not allege in its complaint or discovery responses that Bertram made *any* statements about Eden Foods' products, disparaging or otherwise. Rather, Eden Foods alleged harm from Bertram's publication of the FDA recall notice regarding *Bertram's* product.

Bertram insists that its publication of the FDA's recall notice is the requisite false statement, but that argument misunderstands the nature of a disparagement claim. The recall notice is a *true* statement about Bertram's *own* product, not a false or disparaging statement about Eden Foods' products, and so it cannot serve as the basis for a disparagement claim. *See Duramax Marine LLC v. Travelers Indem. Co. of Ill.*, 107 F. App'x 465, 466 (6th Cir. 2004) (per curiam) (applying substantively identical Ohio law and holding that a company's statements about its own products cannot be the basis for libel, slander, or disparagement claims—even when the statements are false).

Bertram's various remaining arguments are similarly unpersuasive. Bertram next asserts that Eden Foods alleged disparagement in its discovery responses. In one response, Eden Foods denied Bertram's request to admit that Bertram "ha[d] not disparaged [Eden Foods] or [its] products." R. 17-8, Eden Foods' Response to Request for Admission No. 1 at 2–3, Page ID 483–84. In another, Eden Foods stated that "[t]he resulting publicity relating to the [recall notice] issued by the [FDA] has had a disparaging effect on the food and beverage products sold by [Eden Foods] under the mark EDEN." *Id.*, Admission No. 7 at 7, Page ID 488. But Bertram confuses Eden Foods' use of the word "disparage"—in other words, "harm"—with a legal claim

for disparagement. While Eden Foods certainly alleged that Bertram's trademark infringement harmed ("disparaged") Eden Foods' products, Eden Foods did not allege anything resembling a legal claim for disparagement. Again, Bertram publishing the recall notice about its own product is not a false or disparaging statement about Eden Foods' products.

Bertram next cites a number of cases to support its position, but they only confirm that a disparagement claim requires one company to make disparaging statements referring to another company's product, not its own. *See, e.g.*, *Eng'g Tech., Ltd. v. Aetna Cas. & Sur. Co.*, No. 91-1659, 1991 WL 278971, at *2 (6th Cir. 1991) (per curiam) (applying Michigan law, noting that "[a] disparaging statement is one that discredits or casts into doubt another's work or product," and holding that an insurer had no duty to defend because the insured did not act to discredit another company's product). Bertram also suggests that the recall notice may have disparaged Eden Foods by implication. But the cases Bertram cites again cut against it, as they show that a disparagement-by-implication claim still requires one company to clearly compare its products to a competitor's. *See, e.g.*, *Infor Global Solutions (Mich.), Inc. v. St. Paul Fire & Marine Ins. Co.*, 686 F. Supp. 2d 1005, 1007 (N.D. Cal. 2010) ("[T]he Court here found that the allegations in the underlying complaint referred disparagingly to a competitor by clear implication."). That did not occur here, as "Eden Foods did not allege that publication of the recall notice communicated anything (disparaging or not) about Eden Foods, either directly or by implication." *S. Bertram, Inc.*, 2015 WL 7351783, at *2.

Finally, Bertram seems to argue that Eden Foods may have alleged additional claims separate from the common-law tort of disparagement. This argument is not entirely clear, but Bertram does not point to any other potential claims, and we are not required to theorize about what they might be. *See McPherson v. Kelsey*, 125 F.3d 989, 994–96 ("It is not sufficient for a

party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation omitted)). Any harm to Eden Foods' reputation occurred only because consumers confused Eden Foods' products for Bertram's recalled products, and not because Bertram made any statements about Eden Foods products. Accordingly, we hold that Eden Foods did not allege actual or potential claims for disparagement.

## B. Trade Dress

Bertram's remaining argument is that Eden Foods alleged trade *dress* infringement in addition to trademark infringement, and that Citizens had a duty to defend because the Policy covers claims for trade dress infringement. "The trade dress of a product is essentially its total image and overall appearance. It . . . may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Citizens Ins. Co. v. Pro-Seal Serv. Grp., Inc.*, 730 N.W.2d 682, 683 n.1 (Mich. 2007); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992); *FileNet Corp. v. Chubb Corp.*, 735 A.2d 1203, 1210 (N.J. Super. Ct. 1997).[2]

Bertram argues that its use of the word "Eden" in its "Eden Quality Products" label was potential trade dress infringement because it had a similar design to Eden Foods' "Eden" label. "This design," according to Bertram, "consists of a purportedly distinctive use of the word 'Eden' prominently displayed on the product labels in large distinct letters." Appellant Br. at 37.

---

[2] In *Two Pesos*, for example, the plaintiff, a Mexican restaurant, described its trade dress as "a festive eating atmosphere having interior dining and patio areas decorated with artifacts, bright colors, paintings and murals. . . . The stepped exterior of the building is a festive and vivid color scheme using top border paint and neon stripes. Bright awnings and umbrellas continue the theme." 505 U.S. at 765 (citation omitted). In another case, an automobile manufacturer described its trade dress as "the exterior appearance and styling of the vehicle design which includes the grille, slanted and raised hood, split windshield, rectangular doors, squared edges, etc." *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006).



Eden Foods' label                    Bertram's label

R. 16-3, Eden Foods' Trademark, Page ID 133; R. 16-4, Bertram Trademark Application, Page ID 148. The district court rejected Bertram's argument. Although "[t]he printing of the same word on two products necessarily establishes *some* degree of visual similarity," the district court explained that such similarity alone cannot be enough for trade dress infringement, otherwise "conceivably . . . any plaintiff alleging that its trademark was infringed when the mark was printed on another's product could recast that claim as a claim for trade dress infringement." *S. Bertram, Inc.*, 2015 WL 7351783, at *2.

The district court's point is well taken, and the evidence here is insufficient for a potential claim for trade dress infringement. As with disparagement, Eden Foods never alleged trade dress infringement. Although that is not dispositive, Eden Foods also never alleged anything that could conceivably support a claim for trade dress infringement. Eden Foods did not allege any visual similarity between its products and Bertram's products aside from the use of the word "Eden" on the label, and Bertram's label was similar only because it used Eden Foods' trade*marked* word "Eden." Thus, the complaint states nothing more than "fairly typical" claims for trade mark infringement. *S. Bertram, Inc.*, 2015 WL 7351783, at *3; *see Gen. Cas. Co. of Wisconsin v. TDC Int'l Corp.*, No. 289180, 2010 WL 376776, at *1 (Mich. Ct. App. Feb. 2, 2010) (per curiam) (holding that insurer had no duty to defend because "the crux of this underlying complaint . . . involves the use of confusingly similar names, not an infringement of the underlying plaintiff's trade dress"); *see also Parameter Driven Software, Inc. v. Mass. Bay*

*Ins. Co.*, 25 F.3d 332, 337 (6th Cir. 1994) (applying Michigan law). Because the Policy excludes coverage for such claims, Citizens had no duty to defend against them.

Our prior decision in *Parameter*, 25 F.3d at 337, is on point and settles the argument in Citizens' favor. In that case, a competitor sued the insured for trademark infringement. *Id.* The competitor, like Eden Foods, included claims for trademark infringement, trade name infringement, and unfair competition under 15 U.S.C. § 1125(a)—which covers both trademark infringement and trade dress infringement. *Id.* The insurance policy, like the Policy here, excluded coverage for trademark infringement claims. *Id.* When the insured sued the insurer for refusing to defend the lawsuit, we held that the insurer had no duty to defend because the insured had used only a competitor's trademarked word ("PDS") and "[a]ll four counts of [the competitor's] complaint were based upon [the insured's] use of the trademark PDS." *Id.* The circumstances here are indistinguishable. Bertram used a competitor's trademarked word ("Eden"), Eden Foods sued for trademark infringement, all four of Eden Foods' claims "were based upon [Bertram's] use of the trademark [Eden]," and the Policy excludes coverage for claims arising out of trademark infringement. *See id.* Bertram offers no compelling reason why *Parameter* should not govern this case.[3]

Allowing Bertram to mischaracterize Eden Foods' claims as potential trade dress claims would also run contrary to the parties' intent. The Policy is a contract, and under its unambiguous terms Bertram and Citizens intended to exclude coverage for trademark infringement claims. *See Stone v. Auto-Owners Ins. Co.*, 858 N.W.2d 765, 768 (Mich. Ct. App. 2014) ("The primary goal in the construction or interpretation of any contract is to honor the intent of the parties.") (quoting *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 456

---

[3] Bertram tries to distinguish *Parameter* by noting that the underlying lawsuit in that case did not include disparagement claims. Reply Br. at 25. If anything, that makes the two cases more similar, because Eden Foods' lawsuit also did not include disparagement claims.

(Mich. 2003)); *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 773 A.2d 665, 672 (N.J. 2001). Finding an unpled and unsupported trade dress claim would eviscerate that intent by requiring an insurer to defend any lawsuit where the insured copies the plaintiff's trademark—even when the policy contains a clear trademark exclusion and there is no conceivable trade dress claim. You get what you pay for, and (as the district court pointed out) Bertram could have negotiated to include trademark infringement coverage in the Policy. *S. Bertram, Inc.*, 2015 WL 7351783, at *2–3.

Bertram's arguments to the contrary are again unpersuasive. The only case Bertram cites for the proposition that using a trademarked word, on its own, is enough for trade dress infringement actually involved *slogan* infringement. *See Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*, 329 F.3d 546, 555 (6th Cir. 2003) (applying Michigan law). A slogan, we explained, is a "distinctive cry, phrase, or motto of any party . . . [a] catchword or catch phrase." *Id.* at 556. We thus held that the insured's "alleged use of the same phrase" as a competitor was a potential basis for slogan infringement. *Id.* at 557. That is not this case, as Eden Foods did not allege (nor does Bertram argue for) slogan infringement.

Bertram next argues that Count II in Eden's complaint could encompass a potential trade dress claim because it arises under 15 U.S.C. § 1125(a). Section 1125(a) covers "unfair competition," which we have previously noted may include up to a dozen different acts by an insured, including trademark infringement and trade dress infringement. *See Parameter*, 25 F.3d at 336–37 (quoting J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 1.05 (3rd ed. 1992)). Yet citing § 1125(a), on its own, is not enough for a potential claim for trade dress infringement, or else Eden Foods would have alleged a potential claim for every cause of action that might fall under that statute. *See Parameter*, 25 F.3d at 336–

37 (holding that there was no duty to defend despite the plaintiff bringing a claim under § 1125(a) because that claim was based on the insured's use of a trademarked word). We must "focus on the basis for the injury," *Zen Design Grp.*, 329 F.3d at 555, which is indisputably trademark infringement. Count II contains two allegations: (1) that Bertram used its unregistered mark "EDEN QUALITY PRODUCT & Design" to misrepresent that its products were related to Eden Foods' products; and (2) that Bertram put the federal trademark registration symbol close to this unregistered mark to deceive customers. These allegations relate to Bertram using a label with an unregistered mark that infringed on Eden Foods' trademarked word "Eden," and have nothing to do with the trade dress of Eden Foods' products beyond trademark infringement.

Bertram's final argument is a repeated assertion that Citizens' duty to defend was so broad that it must apply in this case even if Eden Foods did not allege facts that could conceivably substantiate a trade dress claim. Bertram went so far at oral argument as to suggest that, had Eden Foods brought a one-claim complaint for trademark infringement, Citizens would have been obligated to defend the lawsuit until Eden Foods admitted in discovery that it was not bringing a trade dress claim. Bertram cites no legal authority for this proposition, and we have found none. The duty to defend applies only if the plaintiff's lawsuit includes actual or potential claims that would be covered under the insurance policy. It does not require insurers to play legal whack-a-mole by defending every lawsuit until the plaintiff affirmatively disclaims every possible unpled claim, even those wholly unsupported by the plaintiff's allegations. Try as it might, Bertram cannot simply rename Eden Foods' trademark claims as trade dress claims and make them so. Eden Foods' claims were based on trade*mark* infringement, and because the Policy excludes coverage for those claims we hold that Citizens had no duty to defend Bertram against Eden Foods' lawsuit.

**CONCLUSION**

For the foregoing reasons, we AFFIRM summary judgment to Citizens.